ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| MONSERRATE ZENO PÉREZ; SAMMY FIGUEROA ZENO; CARMELO ZENO PÉREZ; HILDA ZENO PÉREZ; ÁNGEL LUIS ZENO PÉREZ; RAÚL ZENO PÉREZ; MAYRA SOTO ZENO; JUAN GABRIEL COLÓN ZENO Y OTROS<br><br>Apelantes<br><br>V.<br><br>LESLIE ANTONIO CARDONA HERNÁNDEZ<br><br>Apelado | TA2026AP00033 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2019CV00958<br><br>Sobre: Relevo de sentencia; expediente de dominio contradictorio |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de junio de 2026.

Comparecen las señoras Monserrate e Hilda Zeno Pérez y Mayra Soto Zeno, así como los señores Carmelo, Ángel Luis y Raúl Zeno Pérez, Sammy Figueroa Zeno y Juan Gabriel Colón Zeno (familia Zeno o apelantes), quienes solicitan la revisión de una *Sentencia Enmendada* emitida y notificada el 6 de noviembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI).[1] En dicho dictamen, el foro primario desestimó con perjuicio la *Demanda* presentada contra el señor Leslie Antonio Cardona Hernández (apelado), tras concluir que los apelantes no presentaron prueba suficiente para justificar el relevo de una *Resolución* emitida a favor del apelado en un procedimiento de expediente de dominio.

Luego de examinar los planteamientos de las partes y la transcripción de la prueba oral (TPO), procede confirmar la determinación apelada.

---

[1] Entrada Núm. 156 en el caso AR2019CV00958 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

## I.

Este caso se originó el 3 de junio de 2019, cuando los apelantes presentaron una *Demanda* sobre relevo de sentencia y expediente de dominio contradictorio contra el señor Cardona Hernández.[2] En esta, adujeron que, el 10 de septiembre de 2018, el TPI emitió una *Resolución* en un procedimiento de expediente de dominio, mediante la cual justificó el dominio del apelado sobre un remanente de una finca inscrita a favor de la familia Zeno.[3]

Arguyeron que el señor Cardona Hernández alegó que adquirió el predio que ocupaba mediante un contrato extraviado otorgado por su abuela, quien lo ocupó como precarista o por mera tolerancia de los titulares. Aunque reconocieron la posesión quieta, pública y pacífica, así como las mejoras efectuadas por el apelado, negaron que fuera en concepto de dueño, buena fe o con justo título. Alegaron que este no poseyó el predio por treinta (30) años ininterrumpidos, ya que residió en Estados Unidos por cerca de diez (10) años.

Tras varios trámites procesales, el juicio en su fondo se celebró del 18 al 20 de octubre de 2023, en el que declararon varios testigos, cuyos testimonios se sintetizan a continuación:

**Monserrate Zeno Pérez**

La testigo, nacida en 1939, declaró que siempre ha vivido con sus hermanos en la finca de sus progenitores, Ramón Zeno Cuchi y Dolores Pérez Abreu, en Higuillales, Hato Arriba de Arecibo, donde también residían un medio hermano y una tía.[4] Añadió que conocía al apelado como Tony, quien era sobrino de su cuñada e hijo de Ramón Cardona y que vivía cerca de su casa desde hacía veinte (20) o treinta (30) años, aunque cambiaba de residencia con frecuencia.[5]

---

[2] *Íd.*, Entrada Núm. 1. Posteriormente se enmendó para incluir demandantes adicionales.
[3] Véase caso C JV2018-0109.
[4] TPO del 18 de octubre de 2023, pág. 72, líneas 16-24; pág. 73, líneas 14-25; pág. 74, líneas 1-25; pág. 75, líneas 1-18; pág. 76, líneas 11-13; pág. 81, líneas 21-25.
[5] *Íd.*, pág. 77, líneas 16-21; pág. 78, líneas 4-23; pág. 80, líneas 2-25; pág. 81, líneas 1-14.

**Hilda Zeno Pérez**

La testigo relató que, desde que nació en 1941, vivió con sus hermanos en la finca de su padre en el sector Higuillales, quien permitió que varias familias ocuparan un predio a bajo precio.[6] A su vez, indicó que conocía al señor Cardona Hernández y a su padre.[7]

**Carmelo Zeno Pérez**

El testigo, nacido en 1935, declaró que vivió con sus padres y hermanos en terrenos gubernamentales en el sector El Abra San Francisco y que luego se trasladó con su esposa al sector Higuillales.[8]

**Juan Gabriel Colón Zeno**

El testigo sostuvo que llevaba alrededor de cuarenta y ocho (48) años viviendo en la finca de su abuelo materno en el sector Higuillales.[9] Atestó que el señor Cardona Hernández era sobrino de la esposa de su tío Carmelo, que ambos se criaron juntos porque vivían casi al lado y que aquel residía en la finca de su abuelo.[10]

**Mayra Soto Zeno**

La testigo señaló que vivió desde su nacimiento en el sector Higuillales de Arecibo, dentro de la finca de sus abuelos, donde también residían sus tíos.[11] Testificó que su abuelo permitió que el padre del apelado viviera en dicha finca.[12] Expresó que se crió junto al apelado, conocido como Tony, y cuya casa visitaba por la amistad entre sus hijas.[13] Declaró que desconocía el propietario del predio ocupado por el señor Cardona Hernández, que vivía en la tercera casa en el camino vecinal hacia el sector El Abra San Francisco.[14]

---

[6] *Íd.*, pág. 85, líneas 1-10; pág. 87, líneas 10-20; pág. 88, líneas 7-25; pág. 89, líneas 1-10; pág. 91, líneas 12-23.

[7] *Íd.*, pág. 91, líneas 24-25; pág. 92, líneas 1-25; pág. 93, líneas 1-14.

[8] *Íd.*, pág. 96, líneas 4-25; pág. 97, líneas 1-25; pág. 98, líneas 1-25.

[9] *Íd.*, pág. 104, líneas 2-10; pág. 105, líneas 1-23.

[10] *Íd.*, líneas 24-25; pág. 106, líneas 1-19; pág. 107, líneas 3-23.

[11] *Íd.*, pág. 109, líneas 7-25; pág. 110, líneas 20-25; pág. 111, líneas 1-19.

[12] *Íd.*, pág. 111, líneas 20-25; pág. 112, líneas 1-9.

[13] *Íd.*, pág. 112, líneas 4-9.

[14] *Íd.*, líneas 10-21; pág. 113, líneas 1-10.

**Ángel Luis Zeno Pérez**

El testigo, de ochenta y cuatro (84) años de edad, expresó que nació en el sector El Abra San Francisco y que luego se trasladó con sus progenitores y hermanos a Higuillales.[15] Confirmó que tenía dos (2) medio hermanos.[16] Declaró que sus cuñadas, Dominga Cardona Beníquez y Zoraida Santiago Ramos, adquirieron participaciones gananciales en la finca, en la que residía el apelado.[17]

**Sigfredo Canales Plumey**

El agrimensor declaró que el apelado lo contrató para preparar la mensura y el plano del expediente de dominio.[18] Explicó que le indicó que debía citar a los colindantes y señalarle los puntos de colindancia.[19] Testificó que el apelado le informó que el predio colindaba al norte con Blanca Núñez y José Cruz, al sur y al este con su abuela y al oeste con la Administración de Vivienda Rural.[20]

Añadió que no se comunicó con los colindantes, salvo con los del norte, a quienes preguntó si aceptaban el lindero señalado por el apelado.[21] Indicó que los puntos de colindancia estaban delimitados de punto a punto por una verja de *cyclone fence* y que entendió correcto el lindero oeste por los amojonamientos establecidos por la Administración de Vivienda Rural, aunque reconoció que debía certificarse con el Departamento de la Vivienda.[22] De otra parte, admitió que no verificó el Registro de la Propiedad, ya que el señor Cardona Hernández le informó que el predio no constaba inscrito.[23]

---

[15] *Íd.*, pág. 114, líneas 9-25; pág. 115, líneas 1-4; pág. 116, líneas 9-18.
[16] *Íd.*, pág. 119, líneas 9-25.
[17] *Íd.*, pág. 117, líneas 16-25; pág. 118, líneas 1-10; pág. 135, líneas 3-25.
[18] TPO del 19 de octubre de 2023, pág. 9, líneas 15-25; pág. 15, líneas 17-25; pág. 16, líneas 1-10.
[19] *Íd.*, pág. 16, líneas 6-25; pág. 17, líneas 1-3.
[20] *Íd.*, pág. 17, líneas 2-24; pág. 19, líneas 3-8.
[21] *Íd.*, pág. 19, líneas 18-25; pág. 20, líneas 1-25; pág. 36, líneas 1-13.
[22] *Íd.*, pág. 17, línea 25; pág. 18, líneas 1-6; pág. 19, líneas 10-17; pág. 32, líneas 12-25; pág. 33, líneas 1-24; pág. 37, líneas 10-25; pág. 38, líneas 1-7.
[23] *Íd.*, pág. 19, líneas 18-25; pág. 20, líneas 1-9.

**Luis Ariel Muñiz Hernández**

El ingeniero declaró que era técnico de agrimensura y delineante autorizado.[24] Explicó que sus funciones incluían trabajo de campo, recopilar información y preparar un plano que remitía al ingeniero para su revisión y firma.[25] Testificó que asistió al ingeniero Crespo Cuevas en los controles de campo para referenciar la mensura a un sistema de coordenadas, ya que parte de la información que debía levantarse correspondía a un área distinta.[26] Manifestó que, en febrero de 2021, utilizó un equipo GPS Trimble R-12 para registrar las coordenadas que el ingeniero incorporó al plano.[27] Añadió que el equipo identificaba posibles sumideros, humedales u otras condiciones del terreno, pero que no detectó sumideros.[28]

**Edwin Crespo Cuevas**

El ingeniero atestó que la familia Zeno lo contrató para mensurar la porción noreste de su finca y verificar si el predio ocupado por el apelado estaba ubicado en esta.[29] Explicó que revisó la finca, la certificación registral, las alegaciones de las partes y los mapas catastrales y de la Junta de Planificación, y preparó un plano de mensura de las porciones norte y este.[30]

Señaló que, según la certificación registral utilizada en su informe, la finca núm. 14,527 se formó por agrupación, tenía una cabida de 87,911.4078 metros cuadrados y colindaba al norte con la Autoridad de Tierras, al sur con la carretera núm. 652, al este con la Sucesión Morell y al oeste con Graciela Del Valle.[31] Añadió que el señor Cardona Hernández le mostró las varillas utilizadas como

---

[24] *Íd.*, pág. 43, líneas 11-25.
[25] *Íd.*, pág. 44, líneas 1-22.
[26] *Íd.*, pág. 52, líneas 8-19.
[27] *Íd.*, líneas 20-25; pág. 53, líneas 1-9; pág. 58, líneas 1-22.
[28] *Íd.*, pág. 53, líneas 14-25; pág. 54, líneas 1-8.
[29] *Íd.*, pág. 109, líneas 11-16.
[30] *Íd.*, pág. 115, líneas 8-25; pág. 116, líneas 1-25; pág. 117, líneas 1-8; pág. 123, líneas 21-25; pág. 124, líneas 1-25; pág. 125, líneas 1-17; pág. 126, líneas 1-16; pág. 129, líneas 2-18.
[31] *Íd.*, pág. 138, líneas 4-21; pág. 152, líneas 8-25; pág. 161, líneas 11-18; TPO del 20 de octubre de 2023, pág. 12, líneas 22-25; pág. 13, líneas 1-25; pág. 14, líneas 1-7.

puntos de colindancia en su expediente de dominio y que, al sobreponer la mensura en los mapas catastrales, el predio ocupado por este estaba ubicado en la porción noreste de la finca de la familia Zeno, aunque no colindaba con la Autoridad de Tierras.[32]

En el contrainterrogatorio, aceptó que no midió la finca completa y, por tanto, no podía afirmar su cabida real.[33] También, reconoció que su informe no reflejaba citación ni verificación de colindantes distintos a los consignados en la descripción registral.[34] Añadió que, aunque la descripción registral identificaba la colindancia este con la Sucesión Morell, su mensura ubicó la colindancia en el Caño Santiago.[35] Además, aceptó que la residencia del apelado estaba ubicada en el sector El Abra San Francisco, mientras que los apelantes vivían hacia el sector Higuillales.[36]

El testigo reconoció que la cabida informada por el CRIM y el mapa esquemático no necesariamente reflejaban la realidad del terreno; que podían existir márgenes de error u omisiones de segregaciones en los mapas catastrales y que no obtuvo una certificación del Departamento de la Vivienda sobre su colindancia.[37]

Durante la pendencia del juicio, el 19 de octubre de 2023, el señor Cardona Hernández solicitó la desestimación de la *Demanda* por falta de partes indispensables al alegar que no se incluyeron a los medio hermanos y las cuñadas cotitulares como demandantes.[38] En la alternativa, peticionó la presentación de ciertos documentos que aclararan la situación sucesoral y registral.

---

[32] TPO del 19 de octubre de 2023, pág. 112, líneas 6-25.
[33] *Íd.*, pág. 185, líneas 19-25; pág. 186, líneas 1-8; pág. 206, líneas 3-25; pág. 207, líneas 1-3.
[34] TPO del 20 de octubre de 2023, pág. 14, líneas 12-17; pág. 15, líneas 1-25; pág. 16, líneas 1-25; pág. 17, líneas 1-18; pág. 37, líneas 7-21.
[35] TPO del 19 de octubre de 2023, pág. 36, líneas 21-25; pág. 37, líneas 1-6.
[36] *Íd.*, pág. 209, líneas 10-25; pág. 213, líneas 24-25; pág. 214, líneas 1-8.
[37] *Íd.*, pág. 205, líneas 15-25; pág. 249, líneas 21-25; pág. 250, líneas 1-25; pág. 251, líneas 1-3.
[38] Entrada Núm. 125 en SUMAC.

El 9 de noviembre de 2023, la familia Zeno se opuso a la desestimación.[39] Adujo que los medio hermanos no eran partes indispensables en el pleito, ya que vendieron sus participaciones mediante escritura pública. No obstante, solicitó una segunda enmienda a la *Demanda* para incluir como codemandantes a las señoras Cardona Beníquez y Santiago Ramos y sus respectivas Sociedades Legales de Bienes Gananciales.

Más tarde, el 7 de mayo de 2025, el foro *a quo* emitió una *Sentencia*, en la que desestimó sin perjuicio la *Demanda* por falta de partes indispensables con interés propietario.[40] Concluyó que las escrituras invocadas para excluir a los medio hermanos no se anunciaron en el *Informe de la Conferencia con Antelación al Juicio* ni se presentaron durante el juicio, y que la solicitud de enmienda a la *Demanda* se presentó en una etapa avanzada del procedimiento.

En desacuerdo, el 23 de mayo de 2025, los apelantes solicitaron reconsideración para dejar sin efecto la desestimación.[41] Sostuvieron que los medio hermanos no eran partes indispensables al vender sus participaciones hereditarias; que las señoras Cardona Beníquez y Santiago Ramos fueron incluidas en la *Segunda Demanda Enmendada,* y que procedía sustituir a ciertos titulares fallecidos.

En igual fecha, el apelado se allanó a la inclusión de las partes indispensables para finalmente disponer del caso mediante desestimación con perjuicio.[42] Sostuvo que los apelantes no identificaron adecuadamente la finca reclamada ni probaron la interrupción del término prescriptivo y su perito admitió que la finca núm. 14,527 se extinguió por las segregaciones.

El 15 de junio de 2025, los apelantes se opusieron a la desestimación con perjuicio y arguyeron que la prueba ubicaba el

---

[39] *Íd.,* Entrada Núm. 132 en SUMAC.
[40] *Íd.,* Entrada Núm. 142 en SUMAC. Notificada el 8 de mayo de 2025.
[41] *Íd.,* Entrada Núm. 142 en SUMAC.
[42] *Íd.,* Entrada Núm. 147 en SUMAC.

predio ocupado por el señor Cardona Hernández dentro de la finca reclamada por ellos.[43]

Sometido el asunto, el 6 de noviembre de 2025, el TPI emitió una *Sentencia Enmendada,* en la que desestimó con perjuicio la *Demanda* enmendada.[44] Concluyó que los apelantes no probaron su derecho al remedio solicitado ni rebatieron la presunción de validez del expediente de dominio. Razonó que la prueba testifical no permitió identificar con precisión la finca reclamada ni que el predio ocupado por el apelado constituyera el remanente de aquella. Añadió que la prueba pericial fue insuficiente porque no se mensuró la finca núm. 14,527 en su totalidad, no se estableció que el predio ocupado por el apelado fuera un remanente de esta, ni se demostró error extrínseco que justificara el relevo del expediente de dominio. Además, señaló discrepancias entre la descripción registral y el informe pericial.

Insatisfechos, el 21 de noviembre de 2025, los apelantes solicitaron reconsideración.[45] Adujeron que el foro apelado no valoró adecuadamente la prueba que ubicaba el predio en controversia dentro de la finca núm. 14,527 ni las deficiencias en la mensura del expediente de dominio. Sostuvieron que el TPI les impuso la carga de probar que el predio ocupado por el apelado no era un remanente, cuando a este le correspondía acreditar ese extremo, el justo título, la buena fe y la posesión en concepto de dueño.

En oposición, el 3 de diciembre de 2025, el señor Cardona Hernández planteó que el estándar probatorio no incidió en la determinación, sino que los testigos no colocaron al foro *a quo* en posición de resolver que el predio ocupado estaba dentro de la finca de la familia Zeno, ni que el inmueble se construyó con el mero permiso de sus ascendientes.[46]

---

[43] *Íd.,* Entrada Núm. 151 en SUMAC.
[44] *Íd.,* Entrada Núm. 156 en SUMAC. Notificada el 6 de noviembre de 2025.
[45] *Íd.,* Entrada Núm. 162 en SUMAC.
[46] *Íd.,* Entrada Núm. 165 en SUMAC.

El 5 de diciembre de 2025, el TPI emitió una *Resolución Interlocutoria,* mediante la cual denegó la reconsideración.[47]

Aún inconforme, el 12 de enero de 2026, la familia Zeno presentó este recurso de apelación, en el que formuló el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA AL AMPARO DE LA REGLA 39.2 (C) DE PROCEDIMIENTO CIVIL, NO OBSTANTE HABERSE ESTABLECIDO UN CASO PRIMA FACIE MEDIANTE PRUEBA REGISTRAL Y PERICIAL IDÓNEA QUE ACREDITABA LA SUPERPOSICIÓN DEL PREDIO ADJUDICADO EN EL EXPEDIENTE DE DOMINIO SOBRE UNA FINCA INSCRITA A NOMBRE DE LOS DEMANDANTES, LO QUE, CONFORME AL ARTÍCULO 192 DE LA LEY DEL REGISTRO DE LA PROPIEDAD INMOBILIARIA (30 L.P.R.A. § 6298), PRIVABA AL EXPEDIENTE DE DOMINIO DE EFECTO PRECLUSIVO Y OBLIGABA A LA ADJUDICACIÓN DE LA CONTROVERSIA MEDIANTE UN JUICIO ORDINARIO CONTRADICTORIO EN LOS MÉRITOS; AL RESOLVER LO CONTRARIO, EL TRIBUNAL INCURRIÓ EN ERROR DE DERECHO, ERROR MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA Y ABUSO DE DISCRECIÓN.

En esencia, los apelantes sostuvieron que el TPI erró al aplicar estándares propios del relevo de sentencia y de la presunción de corrección del expediente de dominio, y al exigir prueba técnica exhaustiva —mensura total de la finca y reconciliación de colindancias—, cuando bastaba demostrar una controversia dominical *prima facie* que justificara la continuación del juicio. Plantearon que el foro primario les impuso indebidamente la carga de probar que el predio en controversia era un remanente de la finca núm. 14,527, carga que recaía sobre el apelado por haber invocado la existencia de un predio independiente, justo título, buena fe, posesión en concepto de dueño y prescripción adquisitiva.

En torno a la prueba testifical, afirmaron que los miembros de la familia Zeno identificaron la finca, su ocupación histórica, la construcción de viviendas con el permiso del señor Ramón Zeno y la presencia del señor Cardona Hernández y sus ascendientes como ocupantes tolerados, no como titulares. Sostuvieron que los

---

[47] *Íd.,* Entrada Núm. 167 en SUMAC. Notificada el 12 de diciembre de 2025.

testimonios no fueron contradichos con prueba adversa y que el TPI no explicó la razón para descartarlos. Respecto a la prueba pericial, arguyeron que el informe del ingéniero Crespo Cuevas era suficiente. A su vez, puntualizaron que el perito utilizó fuentes registrales, catastrales, geoespaciales y trabajo de campo para concluir que el inmueble estaba ubicado dentro de la finca de la familia Zeno. Por ello, esgrimieron que la prueba estableció una superposición *prima facie* que hacía improcedente la desestimación. Adujeron que el TPI atribuyó al expediente de dominio un efecto de cosa juzgada, pese a que se podía impugnar mediante una acción ordinaria contradictoria.

Por su parte, el 1 de abril de 2026, el señor Cardona Hernández argumentó que procedía confirmar el dictamen apelado, debido a que, concluida la prueba de los apelantes, estos no demostraron *prima facie* su derecho al relevo solicitado ni a la reivindicación del predio. Añadió que el TPI no trató el expediente de dominio como cosa juzgada, ya que los apelantes tuvieron acceso a una acción ordinaria contradictoria, pero no lograron probar su interés propietario sobre el predio en controversia ni su conexión con la finca núm. 14,527.

Transcurrido en exceso el término concedido a los apelantes para informar si interesaban presentar su alegato suplementario, sin que lo hicieran, el recurso quedó perfeccionado para su adjudicación.

## II.

### A. Apreciación de la prueba

Como norma general, un foro apelativo concede amplia deferencia a las determinaciones de hecho y a la adjudicación de credibilidad del TPI, por estar revestidas de una presunción de corrección. *Santiago Maldonado v. Alvelo Rivera*, 2026 TSPR 14, 217 DPR ___ (2026). Pues, el foro primario está en mejor posición para aquilatar la prueba testifical. *Íd.; Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013). Por ello, salvo error manifiesto, pasión, prejuicio o parcialidad, no

procede la intervención apelativa con tales determinaciones. *Íd.; Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194 (2021).

Se incurre en pasión, prejuicio o parcialidad cuando el juzgador actúa movido por inclinaciones personales que afectan su juicio y error manifiesto cuando la apreciación de la prueba se aparta del balance más racional de la evidencia o resulta inherentemente imposible o increíble. *Ortiz Ortiz v. Medtronic, supra.* Así, la intervención apelativa procede cuando las determinaciones del TPI carecen de base suficiente, ya que meras diferencias de criterio no justifican su revisión. *Íd.*

### B. Expediente de dominio contradictorio

El expediente de dominio es un procedimiento especial de jurisdicción voluntaria regulado por la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6291 (*Ley del Registro*), que permite al propietario carente de título inscribible justificar su dominio a fin de lograr la inmatriculación de la finca. *Torres, Cabrera, Ex Parte,* 2025 TSPR 5, 215 DPR ___ (2025); *Bermúdez v. Registrador,* 71 DPR 563 (1950); L. R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra ed., Puerto Rico: Jurídica Editores, 2012, pág. 338. Mientras no exista controversia entre partes conocidas y determinadas, el expediente de dominio conserva su naturaleza *ex parte* y no adjudica derechos dominicales ni produce cosa juzgada sobre la titularidad del inmueble, sino que se limita a justificar el dominio alegado por el promovente. *Íd.*; *Cfr. Sucn. Meléndez v. Almodóvar,* 70 DPR 527 (1949).

Ahora bien, cuando una persona citada se opone a la acreditación del dominio y alega tener mejor derecho que el promovente, el trámite de expediente de dominio queda convertido en un juicio contencioso ordinario. *Íd.*; *Ríos v. Tribunal Superior,* 77 DPR

79 (1954); *Rodríguez v. Registrador*, 75 DPR 712 (1953); véase también, Art. 191 de la *Ley del Registro, supra*, sec. 6297.

De igual forma, aun cuando el tribunal haya declarado justificado el dominio, ello no impide que quien se considere perjudicado inste posteriormente una acción ordinaria contradictoria de dominio cuya sentencia, de prevalecer, podrá servir de título suficiente para cancelar el asiento de inmatriculación. Art. 192 de la *Ley del Registro, supra*, sec. 6298; Rivera Rivera, *op. cit.*, pág. 343.

### C. Relevo de sentencia

Toda sentencia dictada por un tribunal goza de una presunción de validez y corrección. *López García v. López García*, 200 DPR 50 (2018). No obstante, la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, autoriza el relevo de los efectos de una sentencia por causa justificada. *Íd.; Piazza v. Isla del Río, Inc.*, 158 DPR 440 (2003). Entre estas:

> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> (d) nulidad de la sentencia;
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
>
> (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:
>
> > (1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;
> >
> > (2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal. [...] Regla 49.2 de Procedimiento Civil, *supra.*

Dicha regla debe interpretarse liberalmente y toda duda debe resolverse a favor de quien la invoca. *HRS Erase v. CMT*, 205 DPR 689 (2020). Empero, el relevo de sentencia es una determinación discrecional del TPI que merece deferencia apelativa, salvo que se demuestre prejuicio, parcialidad, craso abuso de discreción o error manifiesto, por dicho foro conocer las particularidades del caso y aquilatar la prueba. *Íd.*; *Citibank et al. v. ACBI et al.*, 200 DPR 724 (2018); *Náter v. Ramos*, 162 DPR 616 (2004).

### D. Desestimación por insuficiencia de la prueba

Por su parte, la Regla 39.2 (c) de Procedimiento Civil, *supra*, R. 39. 2 (c) autoriza la desestimación por insuficiencia de la prueba. Mediante este mecanismo, una vez la parte demandante culmina la presentación de su prueba, la parte demandada puede solicitar la desestimación si, conforme a los hechos probados y el derecho aplicable, no existe derecho a remedio alguno. *Íd.* Ante tal solicitud, el tribunal debe aquilatar la prueba presentada hasta ese momento, mediante un escrutinio sereno y cuidadoso, y determinar, según la credibilidad que le merezca la evidencia, si esta satisface los elementos esenciales de la causa de acción. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894 (2011). En cambio, si la evidencia genera duda sobre la posibilidad de que la parte demandante prevalezca, procede requerir a la parte demandada que presente su caso. *Colombani v. Gob. Mun. Bayamón*, 100 DPR 120 (1971).

La desestimación bajo la Regla 39.2 (c) de Procedimiento Civil, *supra*, R. 39.2 (c) depende de la apreciación de la prueba y descansa en la sana discreción del tribunal. *Rivera Figueroa v. The Fuller Brush Co., supra.* Por ello, dicha apreciación merece deferencia apelativa en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Íd.*

**III.**

En el presente caso, los apelantes señalaron que el foro primario erró al desestimar la *Demanda*, pese a que, a su juicio, habían establecido un caso *prima facie* sobre la superposición del predio adjudicado en el expediente de dominio a favor del señor Cardona Hernández sobre una finca inscrita a su favor. Sostuvieron que el TPI aplicó indebidamente estándares propios del relevo de sentencia, trató el expediente de dominio como si cerrara el acceso al juicio ordinario contradictorio, les impuso una carga probatoria excesiva e incidió en la apreciación de la prueba.

Luego de una evaluación sosegada del expediente, incluyendo la TPO del juicio en su fondo, resulta forzoso concluir que no les asiste la razón a la familia Zeno. Si bien el ordenamiento permite que quien se considere perjudicado por una declaración de dominio justificado acuda al tribunal para vindicar el derecho que entienda tener, ello no releva a los demandantes de presentar prueba suficiente sobre los elementos esenciales de su reclamación. En este caso, las causas de acción instadas fueron relevo de sentencia y expediente de dominio contradictorio, por lo que los apelantes debían demostrar que tenían un derecho propietario afectado por la resolución que declaró justificado el dominio del predio a favor del apelado. En particular, debían probar que el predio adjudicado en el expediente de dominio formaba parte, se superponía o constituía un remanente de su finca.

En este contexto, la conclusión del TPI encuentra apoyo en el expediente. Los apelantes no demostraron que el predio objeto del expediente de dominio estuviera ubicado dentro de la finca núm. 14,527 de Arecibo ni que constituyera un remanente de esta. La prueba testifical permitió establecer que varias generaciones de la familia Zeno residieron en el sector Higuillales de Arecibo, en terrenos que alegaron pertenecían al señor Zeno Cuchi, y que conocían al señor Cardona Hernández y a su progenitor por razón de su

proximidad vecinal y familiar. Empero, no lograron identificar la finca sobre la cual reclamaban titularidad, ubicar dentro de esta el predio respecto al cual se había declarado justificado el dominio a favor del apelado u otro elemento esencial para sostener sus causas de acción de relevo de sentencia y expediente de dominio contradictorio. En consecuencia, el foro *a quo* no incidió al concluir que dicha prueba no estableció, con la suficiencia requerida, la superposición alegada.

No surge del dictamen apelado que el TPI le haya conferido al expediente de dominio un efecto de cosa juzgada. El foro primario permitió que los apelantes presentaran su prueba y, una vez dieron por sometido su caso, evaluó si satisficieron los elementos de sus causas de acción. En el ejercicio de esa función adjudicativa, determinó que la familia Zeno no demostró su derecho al remedio solicitado, conclusión que merece deferencia apelativa en ausencia de error manifiesto, pasión, prejuicio o parcialidad, circunstancias que no fueron demostradas ante este Tribunal.

La Regla 39.2 (c) de Procedimiento Civil, *supra*, R. 39.2 (c), autoriza al foro primario, una vez la parte demandante culmina la presentación de su prueba, a determinar si, conforme a los hechos probados hasta ese momento y el derecho aplicable, procede la concesión de algún remedio. En este caso, al no quedar probada la conexión entre el predio respecto al cual se declaró justificado el dominio a favor del señor Cardona Hernández y la finca cuya titularidad reclamaron los apelantes, no erró el foro primario al desestimar las causas de acción al amparo de dicha regla.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia Enmendada* apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones